



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Tom F. Coleman, Jr.
County Attorney
Angelina County
Lufkin, Texas

Dear Sir:

Opinion No. O-865
Re: Contract of county hospital
for laundry work.

Your request for an opinion on the question
as herein stated has been received by this office.

Your letter reads in part as follows:

"I would appreciate an opinion as to
whether or not the board of managers of a
county hospital would violate the nepotism
laws of the State of Texas by awarding a
contract for the hospital laundry work to a
laundry when one of the owners of said
laundry is a doctor and member of the board
of managers of the said county hospital."

Article 4478, Revised Civil Statutes, reads in
part as follows:

"The commissioners court of any county
shall have power to establish a county hos-
pital and to enlarge any existing hospitals
for the care and treatment of persons suffer-
ing from any illness, disease or injury, sub-
ject to the provisions of this chapter...."

Article 4479, Revised Civil Statutes, provides:

"When the commissioners court shall have
acquired a site for such hospital and shall
have awarded contracts for the necessary build-
ings and improvements thereon, it shall appoint
six resident property taxpaying citizens of the

county who shall constitute a board of managers of said hospital. The term of office of each member of said board shall be two years, except that in making the first appointments after this Act takes effect three members shall be appointed for one year and three members for two years so that thereafter three members of said board will be appointed every two years. In case of a tie vote of said board the deadlock may be voted off one way or the other by the county judge of the county. Appointments to fill vacancies occurring by death, resignation or other cause shall be made for the unexpired term. Failure of any manager to attend three consecutive meetings of the board shall cause a vacancy in his office, unless said absence is excused by formal action of the board of managers. The managers shall receive no compensation for their services, but shall be allowed their actual and necessary traveling and other expenses within this State to be audited and paid by the commissioners' court in the same manner as other expenses of the hospital. Any manager after being cited may at any time for cause be removed from office by said court."

Article 4480, Revised Civil Statutes, reads as follows:

"The board of managers shall elect from among its members a president, and one or more vice-presidents and a secretary and a treasurer. It shall appoint a superintendent of the hospital who shall hold office at the pleasure of said board. Said superintendent shall not be a member of the board, and shall be a qualified practitioner of medicine, or be specially trained for work of such character.

"The board shall also appoint a staff of visiting physicians who shall serve without pay from the county, and who shall visit and treat hospital patients at the request either of the managers or of the superintendent.

"Said board shall fix the salaries of the superintendent and all other officers and employees within the limit of the appropriation made therefor by the commissioners court, and such salaries shall be compensation in full for all services rendered. The board shall determine the amount of time required to be spent at the hospital by said superintendent in the discharge of his duties. The board shall have the general management and control of the said hospital, grounds, buildings, officers and employees thereof; of the inmates therein, and of all matters relating to the government, discipline, contracts and fiscal concerns thereof; and make such rules and regulations as may seem to them necessary for carrying out the purposes of such hospital. They shall maintain an effective inspection of said hospital and keep themselves informed of the affairs and management thereof; shall meet at the hospital at least once in every month, and at such other times as may be prescribed in the by-laws; and shall hold an annual meeting at least three weeks prior to the meeting of the commissioners court at which appropriations for the ensuing year are to be considered."

Articles 432 and 433 of the Penal Code read as follows:

"Art. 432. No officer of this State or any officer of any district, county, city, precinct, shhool district, or other municipal subdivision of this State, or any officer or member of any state, district, county, city, school district or other municipal board, or judge of any court, created by or under authority of any general or special law of this State, or any member of the Legislature, shall appoint, or vote for, or confirm the appointment to any office, position, clerkship, employment or duty, of any person related within the second degree by affinity or within the third degree by

Hon. Tom F. Coleman, Page 4

consanguinity to the person so appointing or
so voting, or to any other member of any such
board, the Legislature, or court of which such
person so appointing or voting may be a mem-
ber, when the salary, fees or compensation of
such appointee is to be paid for, directly or
indirectly, out of or from public Dunds or fees
of office of any kind or character whatsoever."

"Art. 433. The inhibitions set forth in
this law shall apply to and include the Governor,
Lieutenant Governor, Speaker of the House of
Representatives, Railroad Commissioners, head
of departments of the State government, judges
and members of any and all Boards and courts
established by or under the authority of any
general or special law of this State, members
of the Legislature, mayors, commissioners,
recorders, aldermen and members of school boards
of incorporated cities and towns, public shhool
trustees, officers and members of boards of mana-
gers of the State University and of its several
branches, and of the various State educational
institutions and of the various State eleemosynary
institutions, and of the penitentiaries. This
enumeration shall not be held to exclude from the
operation and effect of this law any person in-
cluded within its general provisions."

We quote from Texas Jurisprudence, Vol. 10,
page 211 as follows:

"Contracts calculated to destroy or
interfere with the free exercise of the
discretion required to be exercised by pub-
lic officers in the performance of their
duties are an interference with the admin-
istration of government, and hence contrary
to public policy.... Contracts which give
a public officer a personal interest in the
official acts to be done by him are contrary
to public policy and void."



Hon. Tom F. Coleman, Page 5


This department held in conference opinion No.
1874, book 50, page 411, that:

"A contract for the sale of supplies
to a state normal school made by a corpora-
tion, the president and general manager of
which is president of the state normal school
board of regents is contrary to public policy
and void.

"Statutes prohibiting officials from
contracting on behalf of the state with them-
selves are declaratory of the common law.

"That a member of an official board did
not cast his vote in favor of letting the
contract to a corporation in which a stock-
holder would not relieve the transaction from
the operation of the rule."

The reports abound in cases based upon statutes
prohibiting officials becoming interested in contracts of
the state. Statutes of this character, however, are nothing
more than the adoption of the common law rule to the effect
that one cannot in his official capacity deal with himself
as an individual. See the case of Smith vs. Albany, 61 NY
444, discussing this rule.

In the case of the City of Fort Wayne vs. Rosenthal,
75 Ind. 150, it was held that an employment by a board of
health of one of its members to vaccinate pupils in a public school
was void. The court said:

"As agent, he cannot contract with himself
personally. He cannot buy what he is employed
to sell. If employed to procure a service to be
done, he cannot hire himself to do it. This doc-
trine is generally applicable to private agents
and trustees; but the public officers it applies
with greater force, and sound policy requires
that there be no relaxation of its stringency
in any case which comes within its reason."

In the case of Waymire vs. Powell, 105 Ind. 328, the court in holding void a contract between the board of county commissioners and one of its members, said:

"The law will not permit public servants to place themselves in a situation where they may be tempted to do wrong, and this it accomplishes by holding all such employments, whether made directly or indirectly, utterly void."

We quote from the case of Cheney vs. Unroe, 166 Ind. 550, as follows:

"It is well established and salutary doctrine.....that he who is entrusted with the business of others cannot be allowed to make such business an object of pecuniary profit to himself. This rule does not depend on reasoning technical in its character, and it is not local in its application. It is based on principles of reason, of morality, and of public policy. It has its foundation in the very constitution of our nature, for it has authoritatively been declared that a man cannot serve two masters, and is recognized and enforced whenever a well regulated system of jurisprudence prevails."

The Supreme Court of Texas discussed the rule in Willis vs. Abbey, 27 Tex. 202, saying:

"Public policy requires that the officers chosen to locate and survey the public lands should not be permitted to speculate in them, or to acquire interest in them, which would present to such officer the temptation to take advantage of the information which their official positions enable them to acquire, to the detriment of the holders of certificates generally."



We quote from 9 Cyc. 485 as follows:

"A people can have no higher public interest, except the preservation of their liberties, than integrity in the administration of their government in all its departments. It is therefore a principle of the common law that it will not lend its aid to enforce a contract to do an act which tends to corrupt or contaminate, by improper and sinister influence, the integrity of our social or political institutions. Public officers should act from high consideration of public duty and every agreement whose tendency or object is to sully the purity or mislead the judgment of those to whom the higher trust is confided is condemned by the courts. The officer may be an executive, administrative, legislative or judicial officer. The principle is the same in either case."

In view of the foregoing authorities, you are respectfully advised that it is the opinion of this department that the board of managers of a county hospital would not violate the nepotism laws of the state by awarding a contract for the hospital laundry work to a laundry when one of the owners of the laundry is a doctor and a member of the board of managers of the county hospital. You are further advised that such a contract would be contrary to public policy and void.

Trusting that the foregoing answers your inquiry, we remain

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Ardell Williams

Ardell Williams
Assistant

APPROVED JUL 6, 1939

AW:AW

ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN